IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIBEL SANABRIA RODRIGUEZ, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social | : | No. 12-5573 |
| Security Administration | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

TIMOTHY R. RICE                                                                                                    April 17, 2013
U.S. MAGISTRATE JUDGE

     Maribel Sanabria Rodriguez seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying her application for Supplemental Security Income ("SSI"). Rodriquez alleges: (1) the ALJ erred in finding she did not meet all of the listed impairments;[1] and (2) the ALJ and the Appeals Council erred in finding she is not disabled based on new evidence concerning her physical condition.[2]

---

[1]     The listing of impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. (the "Listing") is a device used to identify those claimants whose medical impairments are so severe they would be found disabled. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The Listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing "any" gainful activity, not just "substantial" gainful activity. Id.; 20 C.F.R. § 416.925(a) (defining the purpose of the Listing is to describe impairments "severe enough to prevent a person from doing any gainful activity").

[2]     Throughout her brief, Rodriguez alleges the ALJ and the Appeals Council erred in finding she is not disabled, the ALJ incorrectly applied the Listing, and there is new evidence regarding her physical condition, which the ALJ should have used to reconsider its decision denying her benefits and the Appeals Counsel should have used to determine she is disabled. Thus, I will construe Rodriguez's argument as asserting the ALJ erred in applying the Listing and the ALJ and Appeals Council failed to consider the new evidence in finding Rodriguez is not disabled.

After careful review, I find the ALJ and the Appeal Council's decisions were supported by substantial evidence. The ALJ properly considered the Listing and found Rodriguez had only mild or moderate limitations in the relevant Listing categories. The ALJ and the Appeals Council also properly rejected the "new evidence" submitted by Rodriguez concerning her physical injuries. Accordingly, I respectfully recommend Rodriquez's request for review be denied.

## BACKGROUND

On August 4, 2008, Rodriquez applied for SSI, alleging disability starting on August 4, 2008. R. at 137-43. Her application was denied on April 15, 2009 and, though counsel, she filed a timely request for a hearing. R. at 56, 65-84. During a video hearing held on May 25, 2010, Rodriguez and a vocational expert testified. R. at 24-55. The ALJ applied the five step sequential analysis and denied Rodriguez's claim on July 23, 2010.[3] R. at 15-23.

At step one, the ALJ found Rodriguez did not engage in substantial gainful activity since her application date, August 4, 2008. R. at 17. At step two, the ALJ found Rodriguez had the following severe impairments: asthma, depression, and posttraumatic stress disorder ("PTSD"). Id. At step three, the ALJ determined Rodriguez did not have an impairment or combination of impairments that met or medically equaled a Listing. R. at 18. The ALJ found Rodriguez's depression and PTSD may meet the "A" criteria for Affective Disorders, Listing 12.04, and Anxiety Related Disorders, Listing 12.06, but did not meet or medically equal the "B" or "C"

---

[3] In the sequential analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment or severe combination of impairments; (3) has an impairment that meets or equals criteria for a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404; (4) has a residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform any other work existing in the national economy. See 20 C.F.R. § 416.920(a)(4)(i)-(v).

2

criteria for either Listing.  Id.  He found she had mild restrictions in her daily living activities, moderate difficulties in social functioning, and moderate difficulties in concentrating, persistence, or pace.  Id.  The ALJ found Rodriguez did not experience episodes of decompensation.[4]  R. at 18-19.  Further, he did not find evidence of repeated episodes of decompensation, residual disease process, inability to live outside a highly support living environment or complete inability to function independently outside her home.  R. at 19.

The ALJ also found Rodriguez had the RFC to perform a full range of work at all exertional levels, except:

> she would have to avoid exposure to temperature extremes and environmental irritants; she would be limited to simple unskilled entry level work not requiring the ability to understand, remember, and carry out more than simple job instructions, and where knowledge of English is not an essential part of the job; and she would be capable of only minimal interaction with others, including the public, supervisors, and coworkers.

R. at 19.

With this RFC, the ALJ found Rodriguez was unable to perform any past relevant work, such as a kitchen helper and fast food worker, because her social and environmental limitations precluded her from performing such tasks.  R. at 22.  However, the ALJ found there are a significant number of jobs in the national economy that Rodriguez can perform, rendering her not disabled.  R. at 23.

On August 3, 2010, approximately one week after the ALJ's decision, Rodriguez requested the ALJ reconsider his decision based on new evidence of her physical condition stemming from recent gunshot wounds.  Pl.'s Br. at 2.  The ALJ failed to respond to her request

---

[4] Episodes of decompensation are temporary increases in symptoms or signs accompanied by a loss of adaptive functioning.  20 C.F.R. Part 404, Subpart P App'x 1, § 12.00(C)(4). "Repeated episodes of decompensation" are of an extended duration, including three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.  Id.

3

and Rodriguez filed an appeal to the Appeals Council on September 3, 2010. Id. at 3. On August 3, 2012, the Appeal Council concluded Rodriguez was not disabled during the relevant time period considered by the ALJ in Rodriguez's application, and the additional evidence did not warrant a change in the ALJ's determination. R. at 2. It explained that if Rodriguez wanted the ALJ to consider whether she was disabled after July 23, 2010, she would need to reapply. Id.

## FACTUAL HISTORY

Rodriguez, age 32 at the time of the ALJ's decision, is a high school graduate and lives with her mother, brother, and daughter.[5] R. at 22, 34-35, 48. Rodriguez also has two other children who live in Puerto Rico. R. at 36. Rodriguez was raised in Reading, Pennsylvania, and visited Puerto Rico for some time between 2001 and 2003 and again in 2009, when she worked in the fast food industry and as a dish washer. R. at 30, 31, 37. Rodriguez claims disability due to depression, bi-polar disorder, anxiety, and PTSD. R. at 29; Pl.'s Br. at 2. She also has a history of asthma and Hepatitis C. Id.

Rodriguez's medical treatment records contain the following relevant information pertaining to her mental impairments:[6]

- Beginning in March 2009, Rodriguez began therapy treatment at Berks Psychiatry and was diagnosed with depression and PTSD. R. at 322-44. She complained of not

---

[5] The ALJ said during the hearing Rodriquez was "fairly fluent in English." R. at 29-30. However, it seems from the transcript that she primarily speaks Spanish and had difficulty understanding English. The ALJ acknowledged the language barrier, finding her capable of jobs "where knowledge of English is not an essential part of the job . . . ." R. at 19. Rodriguez does not allege any error by the ALJ concerning his findings on the language issue.

[6] Although Rodriguez has asthma and Hepatitis C she sought benefits for her mental impairments, which was the primary focus of the ALJ's decision. Thus, I will not discuss Rodriguez's physical impairments within her medical history. I will address the new evidence pertaining to her "new" physical injuries and impairments with regard to her claim of new evidence.

4

sleeping, crying every day, body pain, and depression. On March 9, 2009, Rodriguez told the treating therapist she was kidnapped and raped by five men four years ago. R. at 340. After this event, she became addicted to drugs. Id. She had been criminally charged with drug possession and she spent some time in prison. Id. She also claimed she made several suicidal attempts with no hospitalization. R. at 341. She tried to hang herself and throw herself off of a bridge after trying to end her drug abuse. R. at 342. She also was diagnosed with opioid dependence. R. at 344.

- On June 24, 2009, Rodriguez told a therapist at Berks Psychiatry she was experiencing racing thoughts, had a conflict with her family, and decreased anxiety. R. at 333. During her examination, she was uncomfortable, was rocking back and forth, and her eyes were closed. Id. On July 29, 2011, the Berks Psychiatry report noted Rodriguez appeared calmer than her last visit, however, still complained of racing thoughts. She was having trouble sleeping, experiencing mood swings, decreased appetite, and was hearing voices. R. at 331.

- In September 21, 2009, Rodriguez was not complying with treatment, she was irritable, and appeared guarded. R. at 329. On October 28, 2009, Rodriguez was still not complying with treatment, having trouble sleeping, and anxious. R. at 328. However, the next month, on November 25, 2009, Rodriguez explained she was sleeping better, not as anxious, and felt calmer. R. at 326. She still was not compliant with the treatment. Id. On December 23, 2009, Rodriquez did not want to meet with the therapist and had her headphones on during the session. R. at 325.

- On April 13, 2010, Rodriguez explained there was stress at home due to family conflict involving her sister and niece. R. at 32.

5

# DISCUSSION

I.    Legal Standard

I must determine whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). "Substantial evidence is 'more than a mere scintilla.'" Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

II.   The ALJ and Appeals Council Properly Applied the Listing

Rodriguez alleges the ALJ erred in concluding her mental impairments did not meet the Listing criteria and should have found her impairments had a severe impact on her ability to function. Pl.'s Br. at 8-9. The ALJ applied the Affective Disorder and Anxiety Related Disorder Listings.[7]

To satisfy a Listing, a claimant's impairment must meet all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.; Jones v. Barnhart, 364 F.3d 501, 504 (3d Cir. 2004) (quoting omitted).

---

[7]    Rodriguez appears to erroneously cite Listing 4.04 and 4.12. Pl.'s Br. at 9. She also cites 11.04, Central nervous system vascular accident, and 11.08, Spinal cord or nerve root lesions, in support of the new evidence concerning the gunshot wounds. Id. at 9, 12. I will address the Listings applied by the ALJ for Affective Disorders and Anxiety Related Disorders, which pertain to Rodriguez's mental impairments.

The Affective Disorder and Anxiety Related Disorder Listings are met when a claimant satisfies the requirements in both paragraphs A and B or satisfies paragraph C of each Listing.[8] 20 C.F.R., Part 404, Subpart P App'x 1, §§ 12.04A-B, 12.06A-B. The ALJ found Rodriguez's diagnosis of depression, bipolar syndrome, and PTSD may meet the requirements of paragraph A; however, her condition did not meet the requirements of paragraph B of either Listing because she had mild restrictions in daily living activities, moderate difficulties in social functioning, moderate restrictions in concentration, persistence, or pace, and no episodes of decompensation. R. at 19.[9] The ALJ also found the evidence failed to establish the criteria for paragraph C under Affective Disorders or Anxiety Related Disorders, because there was no

---

[8] Paragraph A for Affective Disorders and Anxiety Related Disorders requires medically documented persistence either continuous or intermittent of one of the following: depressive syndrome, manic syndrome, or bipolar syndrome. 20 C.F.R., Part 404, Subpart P App'x 1, §§ 12.04A-B, 12.06A-B.

Paragraph B in both Listings is met if the claimant has "at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensating, each of extended duration." Id. §§ 12.04B, 12.06B.

Paragraph C of Affective Disorders requires medically documented history of a chronic affective disorder for at least two years, which causes more than minimal limitation of a person's ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation for extended duration; (2) residual disease process that resulted in marginal adjustments; or (3) a history of one or more years inability to function outside a highly supporting living arrangement, with an indication of continued need for such an arrangement. Id. § 12.04C. Paragraph C of Anxiety Related Disorders requires the complete inability to function independently outside one's home. Id. § 12.06C.

[9] The ALJ found Rodriguez's Global Assessment of Functioning ("GAF") scores in the 35-40 range, a major impairment in several areas, cannot be representative of her functioning over the 12 month period beginning with the application filing date. R. at 21. The ALJ explained this score was assessed when Rodriguez was not taking any psychiatric medication and when she was initially treated. Therefore, the ALJ found that, even if she had such major impairments at the time of the assessment, there is no indication that the level of impairment persisted over a continuous period of 12 months or more as required by the Regulations. See 28 C.F.R. § 416.909.

evidence of repeated decompensation, a residual disease process, or inability to live outside a highly supportive living environment.

Rodriguez argues her 2005 and 2009 medical records and prescribed medications demonstrate she suffered from serious symptoms, which have a serious impact on her occupational and social functioning. The ALJ went through each criterion in paragraph B and C and cited portions of Rodriguez's medical records which supported each of his conclusions. R. at 18-19. He explained Rodriguez does her own laundry, shops for food, and uses public transportation independently. R. at 18. Although she did not always cooperate during her treatments at Berks Psychiatry, she denied having problems getting along with others. Id. Her physicians rated her memory and concentration as fair, even though she complained of racing thoughts and difficulty finishing tasks. R. at 18-19. Moreover, although Rodriguez reported one instance of being fired for not getting along with others, she gave no specifics for this incident. R. at 19. There was no evidence to establish repeated episodes of decompensation, a residual disease process, inability to live outside a highly supportive living environment, or inability to function independently outside of her home. Id. Thus, the ALJ had substantial evidence to support his conclusions.

III.     Proper Rejection of the "New Evidence"

Rodriguez also argues her case should be remanded to the ALJ to consider new evidence of her physical condition pursuant to 42 U.S.C. § 405(g). Pl.'s Br. at 1. Rodriguez alleges she suffered multiple gunshot wounds on June 8, 2010, resulting in loss of use of her legs. Id. at 5. The ALJ did not have any records pertaining to the new evidence at the time of its July 23, 2010 decision. Id. at 2. The Appeals Council considered the new evidence, along with the materials before the ALJ, and denied review. R. at 2.

8

"[A]lthough evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review once the Appeals Council has denied review." Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). A remand on the basis of such evidence would be appropriate only if the evidence is both new and material, and there is "good cause" for Rodriguez's failure to present it to the ALJ. See 42 U.S.C. § 405(g).

Evidence is "new" if it is not "merely cumulative of what is already in the record," Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984), and if it was "not in existence or available to the claimant at the time of the administrative proceeding," Sullivan, 496 U.S. at 626. It is "material" if there is a "reasonable probability that the new evidence would have changed the outcome of the Commissioner's decision." Szubak, 745 F.2d at 833. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id. "As 20 C.F.R. § 416.912(a) clearly provides, it is the plaintiff's burden to prove disability, meaning the plaintiff 'must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).'" Edwards v. Astrue, 525 F. Supp. 2d 710, 713 n.3 (E.D. Pa. 2007).

If new evidence was available at the time of the ALJ's proceeding, remand is unavailable because it encourages disability claimants to present all relevant evidence at the initial hearing. See Matthews, 239 F.3d at 595 ("If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand."); Szubak, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of

obtaining another bite of the apple if the Secretary decides that the claimant is not disabled." (quotation omitted)).

Rodriguez failed to demonstrate why her case should be remanded for review of the new evidence related to her gunshot wounds. This evidence is not "new," because it was available in June 2010, before the ALJ issued his July 2010 decision. Nevertheless, Rodriguez failed to provide the evidence until after the ALJ issued his decision denying her disability benefits. Pl.'s Br. at 2. Rodriguez fails to justify this delay. Because it was Rodriguez's burden to provide this evidence to the ALJ or give "good reason" for not offering it sooner, the Appeals Council properly refused to consider the evidence.[10] See 20 C.F.R. § 416.912(a); Edwards, 525 F. Supp. 2d at 713.[11]

Accordingly, I make the following:

---

[10] The Appeals Council explained the ALJ decided Rodriguez's case through July 23, 2010 and the new medical records are from a later time. R. at 2. Moreover, the Appeals Council properly noted Rodriguez may reapply if she wanted the ALJ to consider whether she was disabled after July 23, 2010. Id.

[11] Rodriguez also argues she does not have the RFC to perform the jobs identified by the ALJ. However, as the new evidence was properly rejected, the ALJ and the Appeals Council did not err in finding Rodriguez can perform the defined jobs based on the record before the ALJ at the time of his decision.

# RECOMMENDATION

AND NOW, this 17th day of April, 2013, it is respectfully recommended Rodriguez's request for review be DENIED and judgment be entered for the Commissioner. Rodriguez may file objections to this Report and Recommendation within fourteen days after being served with a copy thereof. See Fed. R. Civ. P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:

_____
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE